UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

_____

IN RE:
TUESDAY M. BETHONEY,                                  Chapter 13
         DEBTOR                                        Case No. 07-13609-WCH

_____

MEMORANDUM OF DECISION

I. INTRODUCTION

The matters before the Court are Tuesday M. Bethoney's (the "Debtor") Motion To Establish Value Pursuant to 11 U.S.C. Section 506(a) (the "506(a) Motion") and Motion to Modify Rights of Secured Claims [Pursuant to] 11 U.S.C. Section 1322(b)(2) (the "1322(b)(2) Motion") (collectively, the "Motions"). Through these unopposed motions, the Debtor seeks to bifurcate Capital One Auto Finance's ("Capital One") secured claim on her vehicle, which she purchased within 910 days prior to the filing of her Chapter 13 petition. As set forth in greater detail below, I will enter an order denying both motions as the requested relief violates the "hanging paragraph" of 11 U.S.C. § 1325 notwithstanding the lack of objection by the secured creditor.

II. BACKGROUND

The facts of this case are not in dispute.[1] On November 11, 2005, the Debtor purchased a "2005 Dodge Truck Durango - V8 Utility 4D SXT 4WD" (the "Vehicle").[2] The Debtor financed the purchase through Capital One.

---

[1] I may take judicial notice of all records filed in the Debtor's case. *See In re Hyde*, 334 B.R. 506, 508 n. 2 (Bankr. D. Mass. 2005)

[2] Claim No. 8.

On June 8, 2007, the Debtor filed a petition under Chapter 13 of the Bankruptcy Code. On Schedule B - Personal Property, the Debtor valued the Vehicle at $11,000.[3] Capital One filed a proof of claim on July 11, 2007, asserting a secured debt of $29,190.20.[4]

On October 11, 2007, the Debtor filed her First Amended Chapter 13 Plan (the "Plan").[5] In Part V of the Plan, the Debtor included the following provision:

> Debtor has filed Motion to bifurcate the secured claim on the family vehicle, 2005 Dodge into $10,500.00 secured payable at 8% interest directly by the debtor at $212.90 to the creditor monthly and $18,690.00 payable at 10% unsecured through the plan.[6]

Contemporaneous with the filing of the Plan, the Debtor filed the Motions.

In the 506(a) Motion, the Debtor stated that she is the sole owner of the Vehicle and sought a determination that its current value is $10,500, based upon an appraisal she obtained.[7] In the 1322(b)(2) Motion, the Debtor sought to bifurcate Capital One's claim as outlined in Part V of the Plan. The Debtor failed to serve the Motions on Capital One correctly at the address listed on their

---

[3] On Schedule B, Personal Property, the Debtor listed one automobile, a "2005 Dodge" with a value of $11,000. On Schedule C, Property Claimed as Exempt, the Debtor listed a "2003 Dodge Ram" with a value of $11,000. On Schedule D, Creditors Holding Secured Claims, the Debtor listed a "2003 Dodge Ram" with a value of $11,000 subject to a claim of Capital One for $28,000. As the Debtor listed no other vehicle, I will find that the "2003 Dodge Ram" and the Vehicle are the same.

[4] Claim No. 8.

[5] The Debtor previously filed a Chapter 13 plan on July 6, 2007 to which the Chapter 13 trustee objected on the basis that the Debtor's treatment of Capital One's secured claim was unclear. By agreement of the parties, the Debtor filed the Plan to clarify the treatment of Capital One's claim.

[6] Docket No. 35 at 3.

[7] I note that the Debtor failed to attach the appraisal to the 506(a) Motion.

2

proof of claim, and no response was filed.

I held a hearing on the Motions on November 8, 2007, at which time I ordered the Debtor to serve Capital One at the address listed on its proof of claim and continued the hearing to November 29, 2007 to address further whether the Debtor was entitled to the relief she requested given the provisions of the "hanging paragraph" of 11 U.S.C. § 1325. The Debtor subsequently filed a certificate of service for the November 29, 2007 hearing evidencing proper service on Capital One.[8] Capital One, however, filed no response.

At the continued hearing, the Debtor's sole argument was that she properly served the Motions and that no objection had been filed. Recognizing that the applicability of the "hanging paragraph" and whether a debtor may bifurcate a 910-day vehicle claim in the absence of an objection from the secured creditor were issues of first impression before this Court, I took the Motions under advisement.

### III. DISCUSSION

A. Applicability of the "Hanging Paragraph"

Prior to the amendment of 11 U.S.C. § 1325 by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), a Chapter 13 debtor could use 11 U.S.C. §§ 506 and 1322 to bifurcate the claim of a creditor with a security interest in the debtor's vehicle, by treating the claim as secured up to the value of vehicle and reclassifying the balance and paying it through the plan as a non-priority unsecured claim.[9] BAPCPA amended 11 U.S.C. § 1325 by inserting an unnumbered paragraph following 11 U.S.C. § 1325(a)(9), commonly referred as the

---

[8] Docket No. 54.

[9] *In re Montoya*, 341 B.R. 41, 43 (Bankr. D. Utah 2006).

3

"hanging paragraph." It provides:

> For purposes of paragraph (5), section 506 shall not apply to a claim described in that paragraph if the creditor has a purchase money security interest securing the debt that is the subject of the claim, the debt was incurred within the 910-day preceding the date of the filing of the petition, and the collateral for that debt consists of a motor vehicle (as defined in section 30102 of title 49) acquired for the personal use of the debtor, or if collateral for that debt consists of any other thing of value, if the debt was incurred during the 1-year period preceding that filing.[10]

Since the implementation of the hanging paragraph, the vast majority of courts have held that it precludes Chapter 13 debtors from using 11 U.S.C. § 506 to bifurcate 910-day vehicle claims.[11] This Court has found only one court which has held that 11 U.S.C. § 506 does not apply to 910-day vehicle claims and therefore they are not secured for purposes of 11 U.S.C. § 1325(a)(5).[12] I disagree

---

[10] 11 U.S.C. § 1325.

[11] *See, e.g.*, *In re Wright*, 492 F.3d 829, 830 (7th Cir. 2007); *In re Taranto*, 365 B.R. 85, 89 (B.A.P. 6th Cir. 2007); *In re Ross*, 355 B.R. 53 (Bankr. W.D. Tenn. 2006); *In re Sparks*, 346 B.R. 767 (Bankr. S.D. Ohio 2006); *In re Brooks*, 344 B.R. 417 (Bankr. E.D.N.C. 2006); *In re Scruggs*, 342 B.R. 871 (Bankr. E.D. Ark. 2006); *In re Montgomery*, 341 B.R. 843 (Bankr. E.D. Ky. 2006); *In re Montoya*, 341 B.R. at 46; *In re Gentry*, No. 06-50204, 2006 WL 3392947 * 4 (Bankr. E.D. Tenn. Nov. 22, 2006); *In re Tomasini*, 339 B.R. 773 (Bankr. D. Utah 2006); *In re Horn*, 338 B.R. 110 (Bankr. M.D. Ala. 2006); *In re Robinson*, 338 B.R. 70 (Bankr. W.D. Mo. 2006).

[12] *In re Carver*, 338 B.R. 521, 527 (Bankr. S.D. Ga. 2006). *But see Trejos v. Yarnell (In re Trejos)*, 274 B.R. 210, 220 (B.A.P. 9th Cir. 2007) ("hanging paragraph" did not affect finance company's status as a secured creditor); *DaimlerChrysler Fin. Servs. N. America LLC v. Griffin (In re Wilson)*, 374 B.R. 251, 256-257 (B.A.P. 10th Cir. 2007) (rejecting the minority view and holding a "910 claim" is an allowed secured claim); *In re Solis*, 356 B.R. 398, 405 n.11 (Bankr. S.D. Tex. 2006) (*Carver* "is (i) unpersuasive because it interprets statutory language in a way that reaches absurd results . . . and (ii) the absurd result paints the court into a box that it can resolve only by stretching § 1111(b) far beyond any reasonable limits."); *In re DeSardi*, 340 B.R. 790, 812 (Bankr. S.D. Tex. 2006) ("Taking 910 claims out of the purview of § 506 does not mean 910 claims are a new and unique class of claims. . . The Court finds it unlikely that Congress would create a new, undefined type of claim, and then furnish no guidance as to how such a claim should be handled. Rather, this Court turns to basic principles of Code interpretation and finds that a 910-paragraph claim is an allowed secured claim and may be treated under § 1325(a)(5).").

with *In re Carver* and instead join the ever increasing majority as this view is supported by both the case law and the legislative history of BAPCPA.[13] As the court in *In re Montoya* so aptly states:

> A purchase money security interest is secured through the parties' contract and applicable perfection statutes and is secured without the operation the Code. A creditor's secured status is not erased without any further adjudication merely because the hanging paragraph makes the § 506 valuation mechanism inapplicable to 910-day vehicle claims.[14]

It is without question that the retail installment contract the Debtor signed is a purchase money security interest. Additionally, as the Debtor purchased the Vehicle 574 days prior to filing her petition, it is well within the 910-days. Moreover, the Vehicle is a "motor vehicle" as defined by 49 U.S.C. § 30102.[15] The sole remaining issue in deciding whether the "hanging paragraph" applies is whether the Debtor acquired the Vehicle was acquired for the her "personal use."

BAPCPA provides no definition of "personal use" for purposes of the "hanging paragraph."

---

[13] The Report of the House of Representatives included a brief discussion of the amendment to 11 U.S.C. § 1325:

> Protections for Secured Creditors. S. 256's protections for secured creditors include a prohibition against bifurcating a secured debt incurred within the 910-day period preceding the filing of a bankruptcy case if the debt is secured by a purchase money security interest in a motor vehicle acquired for the debtor's personal use. . . . Section 306(b) adds a new paragraph to section 1325(a) of the Bankruptcy Code specifying that Bankruptcy Code section 506 does not apply to a debt incurred within the two and one-half year period preceding the filing of the bankruptcy case if the debt is secured by a purchase money security interest in a motor vehicle acquired for the personal use of the debtor within 910 days preceding the filing of the petition.

H.R. Rep. No. 109-31(I) (2005), *reprinted in* 2005 U.S.C.C.A.N. 88, 103.

[14] *Montoya*, 341 B.R. at 44.

[15] "'[M]otor vehicle' means a vehicle driven or drawn by mechanical power and manufactured primarily for use on public streets, roads, and highways, but does not include a vehicle operated only on a rail line." 49 U.S.C. § 30102(a)(6).

"The 'personal use' element of the hanging paragraph has spawned a surprisingly large volume of cases setting forth various legal tests."[16] Two main lines of interpretation have arisen regarding the word "personal," defining it as either who may use the vehicle or for what purpose the vehicle may be used. There is almost universal agreement that "personal" implies "non-business."[17] The majority of courts, however, have interpreted "personal" also to define who may use the vehicle in question.[18]

After reviewing the plethora of cases, I find the most cogent opinion on this issue is *In re*

---

[16] *In re Grimme*, 371 B.R. 814, 816 (Bankr. S.D. Ohio 2007).

[17] *In re Grimme*, 371 B.R. at 816 ("'[P]ersonal use' means, simply, non-business use."); *In re Andoh*, 370 B.R. 377, 385 (Bankr. D. Colo. 2007) (hanging paragraph did not apply to chapter 13 debtor who acquired vehicle for the debtor's limousine service which was the debtor's sole means of making a living); *Sovereign Bank, F.S.B. (In re Finnegan)*, 358 B.R. 644, 648 (Bankr. M.D. Pa. 2006) (hanging paragraph did not apply to vehicle purchased for non-debtor husband's business use); *In re Lowder*, No. 05-44802, 2006 WL 1794737 *4 (Bankr. D. Kan. June 28, 2006) ("When a debtor can establish that a vehicle has been acquired for business purposes, the hanging paragraph . . . will not apply."); *In re Solis*, 356 B.R. 398, 409 (Bankr. S.D. Tex. 2006). *Cf. In re Martinez*, 363 B.R. 525, 527 (Bankr. S.D. Tex. 2007) (vehicle not acquired for the debtor's "personal use" if it enable the debtor to "make a significant contribution to family income"); *In re Hill*, 352 B.R. 69, 72-73 (Bankr. W.D. La. 2006); *In re Johnson*, 350 B.R. 712 (Bankr. W.D. La. 2006).

[18] *In re Counts*, No. 07-60542-13, 2007 WL 2669204 *4 (Bankr. D. Mont. Sept. 6, 2007) ("personal use" includes family and household uses); *In re Adams*, No. 06-51651, 2007 WL 675958 (Bankr. M.D. Ga. Mar. 1, 2007) (vehicle acquired for use of wife not personal use of debtor); *In re Davis*, No. 06-10461, 2006 WL 3613319 (Bankr. M.D. Ala. Dec. 8, 2006) (vehicle acquired for debtor's husband not for personal use of the debtor); *In re Bolze*, 2006 Bankr. LEXIS 2027 (Bankr. D. Kan. 2006) (minivan acquired specifically for the purpose of transporting the debtor's entire family could constitute a "personal use"); *In re Jackson*, 338 B.R. 923, 925-926 (Bankr. M.D. Ga. 2006) ("personal use" does not include family and household uses); *In re Press*, No. 06-10978, 2006 WL 2734335 (Bankr. S.D. Fla. July 26, 2006) (hanging paragraph was not applicable where debtor husband acquired vehicle for co-debtor wife's personal use); *But see In re Vagi*, 351 B.R. 881 (Bankr. N.D. Ohio 2006) (hanging paragraph applies to vehicles purchased by one debtor for the personal use of a co-debtor).

*Solis*.[19] In this case, the court compiled all the cases written on "personal use" to date and summarized the splits of authority.[20] It first concluded that the statutory language "acquired for" clearly indicated that the analysis must start with the debtor's intent at the date of acquisition and not actual use.[21] Next, the court agreed that if the vehicle were acquired for the exclusive use of a non-debtor than the "hanging paragraph" would not apply, though it noted that this would be complicated if the non-debtor in question were the debtor's spouse.[22] Noting the absence of such words as "exclusively," "mostly," "primarily," and "solely" from the statute, the court adopted a totality of the circumstances test in which the "personal use" requirement is satisfied when the debtor's use is "significant and material."[23] In defining "personal," the court stated the following:

> What does "personal" mean?–"Personal" use and "family or household" use are not different or mutually exclusive. The chapter 13 debtor is always a person, and when the debtor has a family it would be virtually impossible to distinguish "family" use from "personal" use. And, even if "personal" "family" and "household" were mutually exclusive as to any one event or activity, the same vehicle could provide "family or household" benefits on some trips and could provide "personal" benefits on other trips. Therefore, the Court concludes that "personal use" includes any use of the vehicle that benefits the debtor(s) such as transportation that satisfies personal wants (such as recreation), transportation that satisfies personal needs (such as shopping or seeking medical attention or other errands), and transportation that satisfies family and other personal obligations, whether legal or moral obligations. The Court concludes that "personal use" includes transportation to and from work in almost all circumstances since there is almost always an alternative such as walking, bicycling, public transportation, carpooling, obtaining housing closer to the workplace, etc. In circumstances in which there is an alternative, the decision to use

---

[19] *In re Solis*, 356 B.R. 398 ( Bankr. S.D. Tex. 2006).

[20] *Id.* at 405-408.

[21] *Id.* at 409.

[22] *Id.*

[23] *Id.*

an automobile is a personal use: to make the trip faster, more pleasant, and more convenient. But if there is truly no alternative, the Court would not conclude that the use of a vehicle to go to and from work was "personal use" of the vehicle. This Court will consider all of the facts and circumstances to determine whether the vehicle was acquired with the intent of providing personal benefits for the debtor(s).[24]

In somewhat unusual move, the *Solis* court went further to define "use." As is clear from the above quoted passage, the court considered "use" to constitute a benefit. It held that the standard is for whose benefit the vehicle is intended to be used.[25] Accordingly, one need not drive a vehicle in order to use it. The court cited two examples to demonstrate the advantage of this standard. First, a disabled person who acquired a vehicle and a driver would do so for the disabled person's benefit, and therefore "personal use," even though the acquirer in this case is unable to manipulate it.[26] Second, a husband driving a vehicle to run an errand for his wife can be operating the vehicle for the benefit of his wife and therefore constitute "personal use."[27] While this definition of "use" is broad, and in turn broadens the definition of "personal use," it is a logical standard and helps courts make sense of the reality of shared and mixed use vehicles in Chapter 13. At least one other case has extended this reasoning and held that a passenger's enjoyment of a vehicle constitutes "personal use" under the "hanging paragraph."[28]

After reviewing the relevant case law, I conclude *In re Solis* is the best reasoned decision and

---

[24] *Id.* at 409-410. (footnotes omitted).

[25] *Id.*

[26] *Id.*

[27] *Id.* at 411.

[28] *In re Grimme*, 371 B.R. at 817.

8

the first of a developing majority.[29] Adopting a totality of the circumstances test in which the "personal use" requirement, defined as encompassing both "family" and "household" uses, is satisfied when the debtor's use is "significant and material" balances Congress' clear intent that the debtor's use be "non-business" with the practical realities that face Chapter 13 debtors. As the *Solis* court suggests, the lines between such categories are often illusory at best.

While cases such as *In re Jackson* utilize a time honored rule of statutory construction to reach the opposite result, I am compelled to disagree.[30] In *In re Jackson*, the court reasoned that because Congress used the phrase "personal, family, or household use" elsewhere in the Bankruptcy Code, it must mean something different when it limits the term to "personal use" in the "hanging paragraph."[31] While the court is correct that Congress could have incorporated "family and household use" into the "hanging paragraph" if it had wished to do so, in the absence of these uses, the "hanging paragraph" produces anomalous results. For example, the *Jackson* court, relying on the *American Heritage Dictionary of the English Language*, defined "personal" as: "[o]f or relating to a particular person; private."[32] In holding that the "hanging paragraph" did not apply to the facts before it, the court emphasized that the debtor's wife was at all times the *primary* driver of the

---

[29] *In re Counts*, 2007 WL 2669204 *4; *In re Matthews*, 378 B.R. 481 (Bankr. D.S.C. 2007); *In re Lorenz*, 368 B.R. at 485; *In re Adaway*, 367 B.R. 571 (Bankr. E.D. Tex. 2007); *In re Phillips*, 362 B.R. 284, 302-303 (Bankr. E.D. Va. 2007); *In re Fletcher*, No. 07-10597, 2007 WL 1804931 (Bankr. S.D. Fla. June 19, 2007).

[30] *In re Jackson*, 338 B.R. 923, 925-926 (Bankr. M.D. Ga. 2006). *See Sovereign Bank, F.S.B. (In re Finnegan)*, 358 B.R. 644, 648 (Bankr. M.D. Pa. 2006) ("Personal use of the debtor is distinct from personal use of a debtor's household or his dependents." Hanging paragraph does not apply to vehicle purchased for non-debtor husband's business use);

[31] *In re Jackson*, 338 B.R. at 925.

[32] *In re Jackson*, 338 B.R. at 926.

vehicle in question, and that the debtor *primarily* used a different vehicle.[33] As *In re Solis* noted, other courts have used exclusively, solely, and mostly, in evaluating the debtor's usage. If the purpose of the "hanging paragraph" is to protect creditors, which is supported by the Report of the House of Representatives, it would be hard to fathom that Congress intended that debtors could circumvent this provision simply by allowing someone else to use their vehicle. It is much more likely that Congress envisioned "personal use" to encompass the everyday household and family usage common to any Chapter 13 debtor.

In the present case, there is little evidence as to the Debtor's "personal use" of the Vehicle. The only information before me is that the Debtor stated in the Plan that the Vehicle was the "family vehicle." In a case such as this where the evidence is scant, my determination must rest on the burden of proof. Returning to the procedural posture of this case, the Debtor is seeking to establish the value of the Vehicle under 11 U.S.C. § 506(a) and modify the rights of the secured credit under 11 U.S.C. § 1322(b)(2). In a motion under 11 U.S.C. § 506(a), the debtor bears the initial burden of proof.[34] As part of that burden, the debtor must demonstrate that 11 U.S.C. § 506 applies to the debt in question and the "hanging paragraph" does not.[35] In essence, the debtor must prove the absence of at least one of the elements found in the "hanging paragraph."

As I previously stated, the only element left in question was the Debtor's "personal use." While the Plan described the Vehicle as the "family vehicle," which may very well constitute a "family use" within the definition of "personal use," I have no evidence as to what the Debtor's

---

[33] *Id.*

[34] *In re Finnegan*, 358 B.R. at 649.

[35] *In re Fletcher*, 2007 WL 1804931 *2.

intended use was when she acquired the Vehicle.[36] I note that at the first hearing on November 8, 2007, I advised Debtor's counsel that I understood this to be a 910-day vehicle, putting him on notice that such issues needed to be addressed at the continued hearing. At the November 29, 2007, hearing, Debtor's counsel neither requested an evidentiary hearing, nor additional time to brief the issues. Ultimately, the Debtor has not carried her burden and I find the "hanging paragraph" applicable.

Notwithstanding this determination, I will consider whether the Debtor may bifurcate Capital One's claim despite the applicability of the "hanging paragraph" where Capital One has not objected to the Debtor's proposed treatment of its claim despite proper service and whether the Capital One's lack of objection may be construed as implied consent.

B. Effect of the Creditor's Silence on the Debtor's Proposed Treatment

Few courts have addressed the issue of whether a debtor may bifurcate a 910-day vehicle claim in the absence of an objection from the secured creditor. Of those that have, the issue has arisen in the context of confirmation of the debtor's chapter 13 plan.

In *In re Montoya*, the debtor proposed a plan which sought to bifurcate the 910-day vehicle lender's secured claim.[37] The plan contained an explicit acknowledgment that the claim was not subject to 11 U.S.C. § 506, but provided for contrary treatment and included the following statement:

FAILURE OF A CREDITOR TO TIMELY FILE A WRITTEN OBJECTION TO

---

[36] Claim No. 8 does include a copy of the retail installment contract, however, it is illegible, and I am unable to determine whether it states the Vehicle was purchased for "personal, family, or household use."

[37] *In re Montoya*, 341 B.R. at 42 (the debtor in this case did not file any motions to bifurcate the secured lender's claim, but instead simply provided for such treatment in the Chapter 13 plan).

THIS PLAN PRIOR TO CONFIRMATION SHALL CONSTITUTE ACCEPTANCE OF BOTH THE PLAN AND THE TREATMENT OF ITS CLAIM AS SET FORTH THEREIN.[38]

The court began its analysis with grammatical structure of the "hanging paragraph," which begins with the phrase, "For purposes of paragraph (5)."[39] The court concluded that to give meaning to this phrase, 11 U.S.C. § 1325(a)(5) must be considered when contemplating confirmation.[40] Section 1325(a)(5) provides, in relevant part:

> (a) Except as provided in subsection (b), the court shall confirm a plan if-
> . . . . .
> (5) with respect to each allowed secured claim provided for by the plan-
> (A) the holder of such claim has accepted the plan;[41]

The debtor asserted that the secured party's failure to object to a properly noticed plan constituted acceptance of the plan under 11 U.S.C. § 1325(a)(5).[42] The court disagreed, stating:

> This position overstates the case because the parties improperly combine two significantly different concepts and Code sections. It is correct that, if a plan is properly noticed and otherwise meets the requirements of § 1325(a), the Court may deem a secured creditor's silence to constitute acceptance of a plan and the plan may be confirmed. This "implied" acceptance is allowed because Chapter 13, unlike Chapter 11, has no balloting mechanism to evidence acceptance of a proposed plan, and it is only the negative-a filed objection-that evidences the lack of acceptance. When the creditor simply does nothing, the judicial doctrine of "implied" acceptance fills the drafting gap in the Code. The concept of implied acceptance of an otherwise compliant plan, or even voting on similar provisions in Chapter 11, however, is quite different from proposing a plan intentionally inconsistent with the Code and then

---

[38] *Id.* at 43 (emphasis in original).

[39] *Id.* at 44.

[40] *Id.*

[41] 11 U.S.C. § 1325(a)(5)(A).

[42] *In re Montoya*, 341 B.R. at 45.

12

>   waiting for the trap to spring on a somnolent creditor. Creditors are entitled to rely on the few unambiguous provisions of the BAPCPA for their treatment. They should not be required to scour every Chapter 13 plan to ensure that provisions of the BAPCPA specifically inapplicable to them will not be inserted in a proposed plan in the debtor's hope that the improper secured creditor treatment will become res judicata.[43]

The court reasoned that "[a] plan should not be used as a sword to change the explicit provisions of the Code to what the parties wish Congress had drafted."[44] Accordingly, even in the absence of an objection by a creditor, the court has an affirmative duty to review it and ensure its provisions comply with the provisions of the Bankruptcy Code.[45] As such, the court held it could not confirm the plan as proposed.[46]

Other courts have extended *In re Montoya*'s holding in similar circumstances.[47] The court in *In re Montgomery*, for instance, held that even in the absence of a timely objection, the debtors' could not bifurcate a 910-day vehicle claim in their plan because such treatment violated the "hanging paragraph."[48] In *In re Williams*, the debtor filed a plan which proposed to bifurcate the secured creditor's claim on her motor vehicle.[49] Although the plan in no way identified it as such,

---

[43] *Id.* (footnotes omitted).

[44] *Id.* at 46.

[45] *Id.*

[46] *Id.* at 47.

[47] *See Regional Acceptance Corp. v. Williams (In re Williams)*, No. 06-80695, 2007 WL 128891 (Bankr. M.D.N.C. Jan. 12, 2007); *In re Tonioli*, 359 B.R. 814, 817 (Bankr. D. Utah 2007) ("Silence does not always infer consent."); *In re Montgomery*, 341 B.R. at 843.

[48] *In re Montgomery*, 341 B.R. at 845.

[49] *In re Williams*, 2007 WL 128891 *1

the car was in fact a 910-day claim and not subject to bifurcation under the "hanging paragraph."[50] The secured creditor did not object to the plan, and it was subsequently confirmed.[51] Five months later, however, the creditor filed an adversary proceeding seeking a determination that the portion of its secured claim not paid through the plan was not discharged and remained subject to its lien following completion of the plan.[52] Citing both *In re Montoya* and *In re Montgomery*, the court held that "a secured creditor may expect that if it has a 910 claim, it will be treated as if fully secured, and that only if the debt underlying its claim was incurred outside of the 910-day period will § 506(a) be applied."[53] Further, it noted that the requirements of meaningful notice would require the debtor to inform the creditor that it held a 910-day claim and that the debtor intended to treat it in a manner inconsistent with the Bankruptcy Code.[54]

Although these cases relate to confirmation and are procedurally distinct from the present case, they are particularly instructive. Moreover, the Plan provides for the very treatment that the Debtor seeks to obtain through approval of the Motions and as such, I note that confirmation of the Plan is implicitly related to the matter at hand. I concur with the *Montoya* court's interpretation of the interplay between the anti-bifurcation provisions of the "hanging paragraph" and 11 U.S.C. § 1325(a)(5)(A). Congress has explicitly prohibited debtors from bifurcating debts arising out of purchase money security agreements incurred within 910-days of the date of the filing the petition

---

[50] *Id.*

[51] *Id.*

[52] *Id.*

[53] *Id.* at *5.

[54] *Id.*

14

with respect to motor vehicles acquired for the debtor's personal use. The Debtor cannot simply override such legislation and modify Capital One's rights by filing the 506(a) Motion, the 1322(b)(2) Motion and the Plan which provide otherwise. Moreover, I cannot infer Capital One's consent to this treatment from the lack of objection because it has a reasonable expectation that I will not approve treatment which violates the Bankruptcy Code.[55] Therefore, the Motions must be denied and the Plan amended.

## IV. CONCLUSION

In light of the foregoing, I will enter an order denying the Motions and ordering the Debtor to file an amended Chapter 13 plan treating Capital One's claim as fully secured within two weeks.

_____
William Hillman
United States Bankruptcy Judge

Dated: January 17, 2008

---

[55] It is unclear whether a creditor can affirmatively consent to treatment that is prohibited by the express provisions of the "hanging paragraph." No court has yet addressed this issue, and it is beyond the scope of this opinion. Moreover, while creditors may reasonably expect courts will review plans and motions for compliance with the Bankruptcy Code, they would be well advised to not to rest on this expectation and review these pleadings themselves, and when appropriate, file objections in order to protect their rights.